UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARY EVELYN SCHROEDER                         CIVIL ACTION

VERSUS                                        NO:      09-3647

GREATER NEW ORLEANS FEDERAL                   SECTION: "J" (4)
CREDIT UNION D/B/A/ A/K/A GNO
FEDERAL CREDIT UNION and CUMIS
MUTUAL INSURANCE SOCIETY, AS
INSURER FOR THE GREATER NEW
ORLEANS FEDERAL CREDIT UNION

**ORDER**

Before the Court is a **Motion to Quash the Notice of Deposition and Subpoena of Pamela Stephan for her Deposition on July 22, 2010, or, Alternatively, to Limit Pamela Stephan's Deposition Testimony to Issues the Court Determined to be Relevant and Non-Duplicative (R. Doc. 106)** filed by the Defendants, Greater New Orleans Federal Credit Union ("GNOFCU") and CUMIS Mutual Insurance Society ("CUMIS") (collectively, "the Defendants"), seeking to quash the deposition of Pamela Stephan ("Stephan"), a former GNOFCU employee. Plaintiff, Mary Evelyn Schroeder ("Schroeder") opposes the motion. (R. Doc. 110.) After obtaining leave of the Court, the Defendants filed a reply memorandum in support of their motion. (R. Doc. 115.) The motion was heard with oral arguments on July 14, 2010.

I.   **Background**

Plaintiff, Mary Schroeder was an employee of GNOFCU when in December of 2007 she

claims that she noticed irregularities in GNOFCU's mortgage files and discovered practices that violated federal law and GNOFCU policies. (R. Doc. 1, ¶ 10.) Schroeder claims that she reported these violations to the CEO of GNOFCU, Janet Sanders, but was told to "mind her own business." (R. Doc. 1, ¶ 10.) Schroeder claims that she later went to the board of directors of GNOFCU about the violations and presented evidence of the violations to GNOFCU's supervisory committee. (R. Doc. 1, ¶ 10.)

Schroeder claims that she then complained to the National Credit Union Administration ("NCUA") about the GNOFCU's illegal practices. (R. Doc. 1, ¶ 12.) Schroeder claims that shortly after she complained to the NCUA, GNOFCU discovered her complaints and began retaliating against her. (R. Doc. 1, ¶ 12.) Specifically, Schroeder claims that she was demoted and that her salary was reduced by $8,000 because she reported the GNOFCU's violations to the NCUA. (R. Doc. 1, ¶ 13.) Schroeder claims that she was eventually terminated on October 8, 2008, because of her whistleblowing activities. (R. Doc. 1, ¶ 24.)

Schroeder claims that prior to her termination, she filed written complaints with the NCUA and the FBI. (R. Doc. 1, ¶ 24.) She claims that the retaliatory actions taken against her by the GNOFCU violated the Louisiana Whistleblower statute, La. Rev. Stat. Ann. § 23:967. (R. Doc. 1, ¶ 28.) Schroeder seeks compensatory damages, punitive damages, and attorney's fees and costs from GNOFCU based on its conduct. (R. Doc. 1, ¶ 30.)

On or about July 2, 2010, Schroeder served the Defendants with a subpoena and notice of deposition seeking to depose Stephan on July 22, 2010, at 10:00 a.m.[1] (R. Doc. 106-1, Exh. A.)

---

[1] The Defendants attach the subpoena and the notice of deposition to their motion. However, there is no list of topics for the deposition in the Defendants submissions. It is unclear whether Schroeder provided the Defendants with a list of topics in her subpoena or notice of deposition.

Stephan a former employee of the defendant had previously filed a whistleblower claim in federal court, which was dismissed. (R. Doc. 106-2, p. 3.) Stephan then re-filed her claim in state court and the parties reached a confidential settlement of the dispute. (R. Doc. 106-2, p. 4.) The Defendants contend that Stephan performed quality control of consumer loans booked at GNOFCU and was friendly with Schroeder but never worked in the same department as Schroeder. Further, the defendants contend that Stephan was terminated for violating GNOFCU's confidentiality policy on June 6, 2008, which is not relevant to this matter. (R. Doc. 106-2, p. 3.) Consequently, the defendants seek to quash Stephan's deposition because the information sought is irrelevant, not probative, prejudicial, and violative of its confidentiality agreement with Stephan.

## II. **Standard of Review**

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Hebert v. Lando,* 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Rule 45 governs the issuance of subpoenas, and provides that on timely motion, the issuing court must quash or modify a subpoena if it requires disclosure of privileged or other protected matter,

or otherwise subjects the subpoenaed person to undue burden. Fed. R. Civ. P. 45(c)(3). Under Rule 45(c)(1), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.." Fed. R. Civ. P. 45(c)(1). A court must quash or modify a subpoena that fails to allow a reasonable time to comply, requires the disclosure of privileged or protected matters, or subjects a person to an undue burden. Fed.R.Civ.P. 45(c)(3)(A)(i), (iii) & (iv).

### III. Analysis

The Defendants seek to quash Stephan's deposition because they contend it has no probative value and would be prejudicial. (R. Doc. 106-2, p. 4.) The Defendants also argue that the subpoena seeks irrelevant and duplicative information. (R. Doc. 106-2, p. 4.) Finally, the Defendants claim that the subpoena seeks information protected by a confidentiality agreement between GNOFCU and Stephan. (R. Doc. 106-2, p. 4.)

The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result. *United States v. Proctor & Gamble* Co., 356 U.S. 677, 682 (1958). Discovery is intended to operate with minimal judicial supervision unless a dispute arises and one of the parties files a motion involving judicial intervention. "The rules require that discovery be accomplished voluntarily; that is, the parties should affirmatively disclose relevant information without the necessity of court orders compelling disclosure." *Bush Ranch v. E.I. DuPont Nemours and Co.*, 918 F.Supp. 1524, 1542 (M.D. Ga. 1995), *rev'd on other grounds*, 99 F.3d 363 (11th Cir. 1996); *Cruz v. United States*, No. 3:09-cv-155-J-25TEM, 2010 WL 2612509 (M.D. Fla., June 25, 2010).

4

"Rule 26 embraces all 'relevant information' a concept which is defined in the following terms: 'Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" *Victor v. Lawler*, No. 3:08-CV-01374, 2010 WL 2595945, at *2 (M.D. Pa. June 24, 2010); *see also United States v. Shaw*, No. 04-2503 RDR, 2005 WL 3418497, at *1 (D. Kan. 2005) (stating that relevancy is broadly construed so "as a general proposition, a request for discovery should be considered relevant if there is 'any possibility' that the information ought may be relevant to the claim or defense of any party") (quoting *Sheldon v. Vermonty*, 203 F.R.D. 679, 689-90 (D. Kan. 2001))).

The Defendants contend that Stephan has no knowledge about either the alleged mortgage loan irregularities discovered by Schroeder or Schroeder's job performance and reason for termination because she did not work in the mortgage loan department or human resources department and was terminated before Schroeder was fired. (R. Doc. 106-2, p. 6.) The Defendants argue that any testimony by Stephan regarding Schroeder's termination would be speculation and that any testimony regarding her own termination would not be relevant. (R. Doc. 106-2, p. 6.) The Defendants further argue that allowing Stephan to testify about her opinion of why she was terminated will also by unduly prejudicial because it could mislead a jury. (R. Doc. 106-2, p. 8.)

During the hearing, counsel for Schroeder pointed out that Stephan had a meeting with the Supervisory Committee about mortgage fraud. Schroeder indicated further that some of the committee members were deposed[2] and they did not recall a meeting with Stephan. Stephan had

---

[2] Wayne P. Trosclair was a member of the Supervisory Committee and he remembered Stephan contacting the committee but did not recall the discussions. (*See* R. Doc. 110-3, Exh. P-3, Depo of Wayne Trosclair, p. 2, lines 14-25, p. 3, lines 1-2.) Theresa Wolff's deposition was taken and she too did not know whether Stephan worked as an auditor, Stephan's job, nor any discussions regarding Stephan's termination. (*See* R. Doc. 110-4, Exh.P-4, Deposition of Theresa Wolff, p. 2 (p. 75 using the deposition page numbering), lines 1-25.) Wayne Aufrecht was deposed and indicated that

5

previously worked auditing mortgage loan files that had been approved by Janet Sanders where exceptions were found. (*See* R. Doc. 110, Plaintiff's Opposition, p. 2.) None of the witnesses provided direct testimony about the mortgage loans that were improper. The Court finds that the testimony of Stephan is relevant and probative and the relevancy objection is overruled.

The Defendants contend that Stephan's deposition would be duplicative because they have already deposed 14 witnesses in this matter, including five current employees of GNOFCU and two former employees of GNOFCU. The Defendants contend that these 14 witnesses had superior knowledge to Stephan of facts related to this action and that therefore, Stephan's testimony is unnecessary and duplicative. (R. Doc. 106-2, p. 8.)

They further argue that Schroeder has already exceeded the ten depositions allowed under the federal rules, but that in a spirit of cooperation, the Defendants did not oppose Schroeder's motion to take 17 depositions (R. Doc. 92), which was granted by the Court. (R. Doc. 93.) The Defendants claim that in addition to Stephan's deposition, Schroeder has already taken 14 depositions and scheduled or requested four (4) more depositions, therefore exceeding the 17 allowed by the Court. (R. Doc. 106-2, p. 9.) The defendants contend they should not be forced to defend 18 depositions, because to do so would unduly burdensome because Stephan's deposition was unnecessary and irrelevant. (R. Doc. 106-2, p. 9.)

The Court notes that Schroeder's **Unopposed Motion to Enlarge the Number of Depositions to be Taken (R. Doc. 92)** lists Stephan as a person to be deposed. Further, the

---

Stephan was an auditor and that she called to discuss the violation of the loan policy. (*See* R. Doc. 110-5, Exh. P-5, Deposition of Wayne Aufrecht, p.5, lines 1-8.) George Christian, another member of the committee, testified that during the meeting they discussed the loans in question that had gone bad. (*See* R. Doc. 110-7, Exh. P-7, Deposition of George Christian, p. 2 (p. 96 using the deposition page numbering), lines 8-20.)

Defendants did not oppose the motion. (*See* R. Doc. 92, p. 2.) Therefore, the Court is not persuaded by the defendants' contention that permitting Stephan's deposition would be burdensome. Consequently, the burdensome objection is overruled.

Finally, the defendants contend that they entered into a confidentiality agreement with Stephan in resolution of her state court claim. (R. Doc. 106-2, p. 10.) Consequently, the Defendants argue that the Court should honor their confidentiality agreement.

Upon review of the confidentiality agreement[3] the Court finds that plaintiff would not disclose anything regarding the events giving rise to the agreement unless disclosure was required by law. Considering that some of the witnesses who have been deposed about the events regarding the Supervisory Committee activities have spotty recollection about whether Stephan raised similar issues about bad mortgage loans, the Court finds that, subject to the protective order already in place in this proceeding, Stephan may be deposed.

Finally, the Defendants suggest that to the extent the Court deems that Stephan should be deposed, the scope of the deposition should be limited. The Court agrees. The deposition shall not include the terms of the settlement agreement, or the settlement discussions which lead up to the settlement.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that **Motion to Quash Depositions of Pamela Stephan (R. Doc. 110)** is hereby **DENIED**.

---

[3]The Defendants did not provide the confidentiality agreement as an attachment to their submissions, but counsel for the Defendants provide a copy of the confidentiality agreement to the Court for *in camera* review at the July 14, 2010, hearing.

**IT IS FURTHER ORDERED** that the deposition of Pamela Stephan shall be limited in scope and shall not include the terms of the settlement agreement or the settlement discussions which lead up to the settlement agreement.

**IT IS FURTHER ORDERED** that counsel the Defendants shall retrieve the documents provided for *in camera* review no later than **eleven (11) days** from the signing of this Order during normal business hours from the chambers of the undersigned at 500 Poydras Street, Room B-437, New Orleans, LA.

New Orleans, Louisiana, this 29th day of July 2010.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**