UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARY EVELYN SCHROEDER             CIVIL ACTION

VERSUS                                NO: 09-3647

GREATER NEW ORLEANS FEDERAL      SECTION: "J" (4)
CREDIT UNION et al.

**ORDER AND REASONS**

Before the Court is Defendants Cumis Insurance Society
("Cumis") and Greater New Orleans Federal Credit Union ("GNOFCU,"
collectively "Defendants")'s **Motion for Summary Judgment (Rec.
Doc. 146)**. Plaintiff Mary Evelyn Schroeder ("Schroeder" or
"Plaintiff") filed a Response (Rec. Doc. 158). Defendants
submitted a Reply (Rec. Doc. 177). In connection with the motion,
parties submitted excess pages of memoranda and nearly 2,000
pages worth of exhibits. Accordingly, the Court ordered that no
further filings be permitted in relation to the motion for
summary judgment (Rec. Doc. 189).

Also before the Court are Plaintiff's **Motions *In Limine*
(Rec. Docs. 138 and 143)**, Defendants' Response Memorandum in
Opposition (Rec. Doc. 152). Defendants Cumis and GNOFCU also
filed a **Motion *in Limine* (Rec. Doc. 142)**, to which Plaintiff
filed a Response (Rec. Doc. 153). Having considered the motions
and legal memoranda, the record, and the applicable law, the
Court finds that Defendants' Motion for Summary Judgment (Rec.

1

Doc. 146) should be **GRANTED**.

**PROCEDURAL HISTORY AND BACKGROUND FACTS:**

Schroeder was hired by Defendant GNOFCU to fill the position as the collections manager in May 2006.  In July 2007, Plaintiff requested a position with the additional responsibilities of managing GNOFCU's lending department and call center.  GNOFCU agreed to this request and granted Plaintiff these new responsibilities.

Plaintiff alleges that in December 2007 she reported improprieties related to the lending department's handling of mortgage files to Janet Sanders ("Sanders"), the CEO of GNOFCU. Plaintiff claims that the reported improprieties concerned fraudulent activities and violated internal policies, Fannie Mae guidelines, as well as federal and state law. Defendants aver that Sanders independently discovered the irregularities and failure to follow policy in lending and immediately took measures to stop the mistakes and prevent further violations.

According to Defendants, beginning in January of 2008, Sanders recognized that Plaintiff was unable to properly manage the extra departments that she recently took on. Defendants state that to help Plaintiff improve, GNOFCU paid for more than six training seminars about lending and management. However, despite the training, Defendants allege that Plaintiff remained unable to

perform her duties in a satisfactory manner, had difficulties managing her employees, did not meet her departmental goals, and failed to participate as expected in manager meetings. Furthermore, Defendants contend that Plaintiff had an intimidating managerial style and had interpersonal problems with many employees. Defendants also claim that Plaintiff noticeably failed to contribute to the weekly management group meetings which are attended by all senior managers. Defendants point out that in GNOFCU's annual goals and strategy meeting in May of 2008, Plaintiff failed to present the goals and incentives for any of her departments. On June 9, 2008, GNOFCU removed the additional departments from Plaintiff's ambit of supervision, leaving Plaintiff managing only collections. Plaintiff's salary was reduced accordingly beginning on August 11, 2008.

On or about June 27, 2008, Plaintiff appeared before GNOFCU's Supervisory Committee ("Committee") to report irregularities in GNOFCU's mortgage department. Plaintiff then submitted a letter to GNOFCU's Board of Directors ("Board") and Committee on August 21, 2008, which alleged that Sanders demoted her because of the June 27 disclosure to the Committee. In response to the allegations raised in Plaintiff's letter, the Board engaged an attorney, Elvige Cassard ("Cassard"), to analyze Plaintiff's allegations and to advise the Board of the most appropriate course of action and response. GNOFCU had previously

3

employed Cassard as an outside attorney for assistance with other
employment matters. GNOFCU's Board terminated Plaintiff on
October 8, 2008, with the advice and counsel of Cassard.
Defendants assert that Plaintiff's termination was due to her
unsatisfactory performance and neglect of her job duties.

Independently of Plaintiff's complaints, Sanders noted in
December of 2007 and January of 2008 that GNOFCU's sole mortgage
loan officer, Carol Maguire, failed to follow internal policies
when booking a group of ten mortgage loans for GNOFCU during
November and December of 2007. In response, Sanders immediately
engaged in actions to stop these mistakes, including counseling
Maguire, removing Maguire's authority to close loans without
Sanders' direct approval, and canceling Maguire's incentive
program. In order to fully investigate the errors and
deficiencies in these mortgage loans, as well as operations in
the mortgage department, Sanders asked Kristen Yeager, GNOFCU's
former mortgage manager, to audit all mortgage loan files booked
by Maguire and the previous mortgage loan officer. In further
remediation of the issues, Sanders sought to hire a mortgage loan
manager who could supervise Maguire and properly manage the
mortgage process at GNOFCU. Finally, in her efforts to ensure
that GNOFCU was in compliance with all laws and the National
Credit Union Administration ("NCUA") regulations, Sanders e-

mailed an NCUA's representative, Sonya Pickens, to inquire how to correct errors made by Maguire.

In May 2009, Plaintiff filed the instant complaint against Defendants, claiming damages arising under five statutes: (1) the Louisiana Whistleblower Protection Act, La R.S. 23:967; (2) 12 U.S.C. § 1831§(j); (3) 18 U.S.C. § 1513(e); (4) 31 U.S.C. § 5328; and (5) a violation of the whistleblower protection under the Federal Credit Union Act (the "FCUA"), 12 U.S.C. § 1970b.  All of the laws are considered whistleblower protection laws. Defendants now move for summary judgment on all claims.

**THE PARTIES' ARGUMENTS:**

Defendants contend  that Plaintiff's Louisiana whistleblower claim fails as a matter of law and should be dismissed with prejudice, because Plaintiff failed to put forth evidence to satisfy any of the four elements under La. R.S. 23:967.  To prevail on a whistleblower claim under Louisiana law Plaintiff must prove that (1) GNOFCU actually violated a state law; (2) Plaintiff advised GNOFCU of the state law violation; (3) Plaintiff then either refused to participate in the prohibited practice or threatened to disclose the practice to a public body conducting an investigation; and (4) Plaintiff was terminated as a result of her refusal to participate in the unlawful practice or due to her threat to disclose the unlawful practice.

First, Defendants argue that Plaintiff failed to show that

GNOFCU actually violated Louisiana law by committing bank fraud under La. R.S. 14:71.1. They claim that there is no evidence Plaintiff can present to prove that GNOFCU, through its managers, Sanders or the Board of Directors, knowingly executed or attempted to execute a scheme or artifice either to defraud GNOFCU or to obtain any property owned by, or under the custody or control of, a financial institution by means of false or fraudulent pretenses, representations or promises. Neither Plaintiff's deposition nor the testimony of Plaintiff's hired "mortgage expert"proves the elements of bank fraud. Moreover, Plaintiff's hired "mortgage expert" is the subject of a <u>Daubert</u> hearing by Defendant's motion. Additionally, Defendants argue that GNOFCU did not commit theft by violating La. R.S. 14:67. Plaintiff alleges no facts and did not establish that GNOFCU, Sanders, or anyone else in the employ of the credit union took anything of value from anyone, with the intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking, in violation of state law.

Second, Defendants argue that Plaintiff failed to show that she reported an actual violation of state law, because the extensive discovery did not confirm that Plaintiff ever reported a legal violation by GNOFCU to her supervisor or that Plaintiff told anyone of GNOFCU that specific laws were broken by specific acts or practices of GNOFCU. Plaintiff's own speculative,

6

conclusory allegations are insufficient to defeat summary judgment.

Third, Defendants argue that Plaintiff's whistleblower claim fails because she cannot show that she either refused to participate in the prohibited practice or that she threatened GNOFCU about reporting illegal practice to a public body conducting an investigation. Defendants argue that Plaintiff's failure to show that she engaged in a protected activity under La. R.S. 23:967 provides a reason for dismissal of her Louisiana whistleblower claim.

Fourth, Defendants contend that La. R.S. 23:967 only offers protection to those employees who face reprisals from their employers *as a result of* their reporting of an illegal workplace practice *and* refusing to participate in the illegal practice or threaten to report it. Defendants claims that Plaintiff failed to show the requisite casual connection. She even admitted that GNOFCU never threatened her in any way related to her alleged discovery of mortgage fraud.

Fifth, Defendants argue that they are entitled to recover attorneys' fees pursuant to La. R.S. 23:967D because Plaintiff failed to establish that GNOFCU actually committed a state law violation and because Plaintiff's whistleblower claim was brought in bad faith. Defendants argue that Plaintiff filed suit despite the fact that she knew she did not fulfill any of the required

elements of the Louisiana Whistleblower Act. Further, Plaintiff knew GNOFCU had fixed the mortgage process and had responded to her issues with an audit.

Next, Defendants contend  that Plaintiff's claim under 12 U.S.C. §1831j fails as a matter of law because it does not apply to credit unions but rather to federal deposit insurance corporations only. GNOFCU is a federal credit union. In addition, Defendants assert that Plaintiff never reported any alleged wrongdoing by GNOFCU to the Attorney General or a federal bank agency as required under 12 U.S.C. §1831j. Similarly, Defendants argue that Plaintiff's claim under 31 U.S.C. § 5328 fails as a matter of law because the statute does not apply to federal credit unions covered under the FCUA, and that Plaintiff's claim under 18 U.S.C. §1513(E), a criminal statute, fails as a matter of law because Plaintiff has no standing to allege the violation of the federal criminal code in this civil proceeding against Defendants.

When addressing Plaintiff's federal law allegations, Defendants argue that Plaintiff's claim under 12 U.S.C. §1790b fails as a matter of law because Plaintiff cannot establish a prima facie case of retaliation. First, Defendants argue that Plaintiff failed to show that she engaged in an activity protected under 12 U.S.C. §1790b. Prior to October of 2008, the NCUA has no records of Plaintiff's alleged phone calls to the

NCUA fraud hotline. Further, Plaintiff's written complaint to the NCUA was made several days after her termination. Second, Defendants argue that Plaintiff failed to show that GNOFCU had knowledge of Plaintiff's alleged protected activity. Plaintiff testified that she never told Sanders or a board member that she made a report to the NCUA. Further, the gossip Sanders heard from her administrative assistant  that Plaintiff was going to the NCUA does  not suffice to put GNOFCU on notice that Plaintiff made a report to the NCUA. No one other than Plaintiff knew about her written report to the NCUA until after she filed the lawsuit. Third, Defendants argue that Plaintiff failed to show a casual connection between her termination and her alleged protected activity. Plaintiff's demotion and termination were performance-related. Moreover, Defendant argues that Plaintiff's 12 U.S.C. §1790b claim must fail because the facts show that Plaintiff tried to abuse the protection afforded to whistleblowers in order to extort GNOFCU not to fire or demote her. Finally, Defendants argue that  GNOFCU's reason for Plaintiff's reduction of salary and termination are non-discriminatory and not a pre-text.

Further,  Defendants contend  that Plaintiff's request for punitive damages must be dismissed with prejudice, because neither 31 U.S.C. §5328 nor 12 U.S.C. §1831j are applicable to federal credit unions and cannot serve as a remedy for Plaintiff. Moreover, according to Defendants, Plaintiff would not be

entitled to punitive damages even if she should prevail on her whistleblower claim under 12 U.S.C. §1790b.  Defendants urge the Court to analyze the statutory language of 12 U.S.C. §1790b(c)(3) and read it in context of 12 U.S.C. §1790b(c)(1) and (2), as did another court in Kittel v. C-Plant Federal Credit Union, No. 5:08-00114, 2010 U.S. Dist. LEXIS 50949, *7 (W.D. Ken. May 24, 2010), and conclude that it was not Congress' intent to authorize punitive damages as a remedy under §1790b(c) when it specifically stated that the other action should have the intention to remedy past discrimination.

Finally, Defendants aver that Plaintiff's request for attorneys' fees under 12 U.S.C. §1790b fails as a matter of law and must be dismissed with prejudice because no court has ever awarded attorney fees in a 12 U.S.C. §1790b case.

In response, Plaintiff argues that whether her whistleblowing was a contributory factor to her termination is a factual dispute which should be decided by the jury, and not on summary judgment. Plaintiff asserts that after her May 2008 complaint to Wayne Aufrecht, Chairman of Defendant GNOFCU's Supervisory Committee, Defendant GNOFSU started its investigation, which revealed fraudulent mortgage loans in violation of federal and state law, as well as in violation of NCUA regulations. Plaintiff argues that Defendants are not entitled to summary judgment on Plaintiff's federal law claims.

10

Plaintiff urges this Court to follow case law that employs the other anti-retaliation analysis for purposes of Plaintiff's whistleblower claims. As such, Plaintiff argues that she can establish a prima facie case of retaliation. First, she engaged in a protected activity when she reported the mortgage violations to the NCUA. Second, Plaintiff suffered an adverse employment action when she underwent a pay cut and then was terminated. Finally, Plaintiff claims that there is a causal connection between the protected activity and the adverse employment action. According to Plaintiff, courts lessen the plaintiff's burden in whistleblower cases and apply a "contributing factor" standard to a complaint for a discharge for engaging in protected activities. Plaintiff contends that courts use a three-part test to establish whether the requisite causal connection exists: they look at the employee's disciplinary record, they review whether policy was followed in terminating the employee, and they analyze the temporal relationship between the employee's conduct and the resulting adverse action.  In Plaintiff's view, she had no negative employment record, there was no policy followed in demoting and terminating Plaintiff, and the timing of the demotion and termination followed closely after Plaintiff complained.

Additionally, Plaintiff argues that she is entitled to punitive damages because 12 U.S.C. § 1790b grants the Court the

authority to "take other appropriate actions to remedy past discrimination."

Plaintiff further contends that Defendants are not entitled to summary judgment on Plaintiff's state law claims. She argues that she identified facts, showing that Defendants, or Defendants' employees, have committed statutory fraud pursuant to La. R.S. 14:67 and bank fraud pursuant to La. R.S. 14:71.1. Plaintiff reiterates that she advised Defendant GNOFCU of criminal wrongdoing in violation of state laws and asserts that she both objected to and refused to participate in the fraudulent conduct. Plaintiff claims to have been terminated due to her opposition to Defendants' fraudulent activities.

**DISCUSSION:**

**A.  Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or

12

weighing the evidence." Delta & Pine Land Co. v. Nationwide
Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All
reasonable inferences are drawn in favor of the nonmoving party,
but a party cannot defeat summary judgment with conclusory
allegations or unsubstantiated assertions. Little, 37 F.3d at
1075. A court ultimately must be satisfied that "a reasonable
jury could not return a verdict for the nonmoving party." Delta,
530 F.3d 399.

If the dispositive issue is one on which the moving party
will bear the burden of proof at trial, the moving party "must
come forward with evidence which would 'entitle it to a directed
verdict if the evidence went uncontroverted at trial.'" Int'l
Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263-64 (5th
Cir. 1991) (citation omitted). The nonmoving party can then
defeat the motion by either countering with sufficient evidence
of its own, or "showing that the moving party's evidence is so
sheer that it may not persuade the reasonable fact-finder to
return a verdict in favor of the moving party." Id. at 1265.

If the dispositive issue is one on which the nonmoving party
will bear the burden of proof at trial, the moving party may
satisfy its burden by merely pointing out that the evidence in
the record is insufficient with respect to an essential element
of the nonmoving party's claim. See Celotex, 477 U.S. at 325. The
burden then shifts to the nonmoving party, who must, by

13

submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. See, e.g., id. at 325; Little, 37 F.3d at 1075.

**B. Whistleblower Claims**

In analyzing whistleblower claims under La. R.S. 23:967 and under 12 U.S.C. § 1790b, courts use the same framework as that applied in Title VII retaliation cases. Because the case law interpreting § 1790b is extremely sparse, courts have look to "case law construing comparably-phrased anti-retaliation provisions in other federal employment- discrimination statutes." Simas v. First Citizens' Federal Credit Union, 170 F.3d 37, 43 (1st Cir. 1999). While the Louisiana  Supreme Court has not spoken directly on whether the federal anti-discrimination framework applies to § 23:967 cases, Louisiana  courts have often looked to federal anti-discrimination jurisprudence in interpreting Louisiana's anti-discrimination statutes. See, e.g., Plummer v. Marriott Corp., No. 94-CA-2025, (La.App. 4 Cir. 04/26/95); 654 So. 2d 843, 848; Alphonse v. Omni Hotels Mgmt. Corp., No. 94-CA-0157 (La.App. 4 Cir. 09/29/94); 643 So. 2d 836, 838; Bennett v. Corroon and Black Corp., 517 So. 2d 1245, 1246-47 (La. App. 4 Cir.1987). Accordingly, the Court will resort to the

14

Title VII framework in analyzing Plaintiff's federal and state whistleblower claims.

To establish a prima facie case in employment retaliation cases at the summary judgment stage, an employee must show that (1) she engaged in a protected activity; (2) that her employer took the adverse employment action; and (3) that a causal link exists between the protected activity and the adverse employment action. McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007).

For Plaintiff to prevail on her federal claim under § 1790b, her "protected activity" must involve providing information to the NCUA Board or the Attorney General. 12 U.S.C. § 1790b(a)(1); Bruns v. National Credit Union Admin., 122 F.3d 1251, 1254 (9th Cir. 1997); Wyrick v. TWA Credit Union, 804 F. Supp. 1176, 1179-1180 (W.D. Mis. Oct. 16, 1992) (holding that to read the cause of action to include reports to other persons would require the court to ignore the plain language of the statute and the purpose of the legislation). Plaintiff's alleged complaints to GNOFCU, its Board of Directors, the Supervisory Committee, or anyone else at the GNOFCU, are not cognizable under 12 U.S.C. §1790b. Stephan v. Greater New Orleans Federal Credit Union, No. 09-3712, 2009 U.S. Dist. LEXIS 106913, *6-8 (E.D. La. Nov. 16, 2009); Wyrick, 804 F. Supp. at 1179.  Thus, the only way Plaintiff could prevail is if the adverse employment action was taken because she

reported the alleged violations to the NCUA, which she is unable
to prove because Defendants were not aware that Plaintiff filed
her complaint until this suit was filed. CEO Sanders testifies
that until the lawsuit was filed, she was not aware that
Plaintiff had gone to the NCUA (Rec. Doc. 146-5, at 29). The NCUA
had no records of any calls from Plaintiff to the fraud hotline
despite its protocol to document; the NCUA did not initiate an
investigation in response to the alleged calls. The NCUA produced
documentation that showed that the NCUA received Plaintiff's
complaint on October 22, 2008 and that Plaintiff's complaint
letter was dated October 6, 2008 (Rec. Doc. 146-31, at 3).
Plaintiff did not provide any proof that the letter was mailed
prior to her termination date. There are no witnesses who saw or
heard Plaintiff make a call to the NCUA hotline. Plaintiff
testified during her depositions that she previously dialed the
NCUA and that the NCUA returned her call. However, Plaintiff's
self serving allegations are insufficient to create a genuine
issue of material fact as to whether she engaged in a protected
activity. National Ass'n of Gov't Employees v. City Pub. Serv.
Bd., 40 F.3d 698, 712 (5th Cir. 1994) (holding that "the
plaintiff [can]not rest on his allegations . . . to get to a jury
without any significant probative evidence tending to support the
complaint."); Edwards v. Your Credit, Inc., 148 F.3d 427, 432
(5th Cir. 1998) (holding that "We do not, however, in the absence

of any proof, assume that the nonmoving party could or would prove the necessary facts"). Plaintiff also testified that she never told Sanders that she was going to complain to the NCUA, the attorney general, or the FBI (Rec. Docs. 146-17, at 24; 146-19, at 4-5), nor did she tell the Board members that she was going to file a complaint with any state or federal authority (Rec. Doc. 146-19, at 4-5). Consequently, Defendant's motion for summary judgment on Plaintiff's federal claim must be granted.

Moreover, to succeed in her whistleblower claims under La. R.S. 23:967, as well as under 12 U.S.C. § 1790b, Plaintiff must establish that she suffered the adverse action *because of* her protected activity. 12 U.S.C. § 1790b(a)(1) ("No insured credit union may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee . . . provided information to the Board or the Attorney General regarding any possible violation . . . .). Cf. La. R.S. 23:967(A)(1) ("An employer shall not take reprisal against an employee who ... after advising the employer of the violation of law ... threatens to disclose a workplace act or practice that is in violation of state law."); Diaz v. Superior Energy Services LLC., No. 07-2805, 341 Fed.Appx. 26, 28 (5th Cir. Aug. 3, 2009) (Plaintiff must show, among other things that she was "fired as a result of her refusal to participate in the unlawful practice or threat to

disclose the practice"); <u>Hale v. Touro Infirmary</u>, 886 So. 2d 1210, 1216 (La. App. 4th Cir. 2004) (noting that the plaintiff must establish that she advised her employer of the alleged violation of law and then threatened to disclose the violation, and, as a result of her threat, was fired).

It is questionable whether GNOFCU could have retaliated against Plaintiff because it is highly doubtful that GNOFCU knew that Plaintiff engaged in any protected activity at all. During the time of the alleged whistleblowing, GNOFCU was already taking remedial action to fix the problems, discovered independently of Plaintiff's complaints. Plaintiff claims that she complained to Sanders about certain loan files several times in 2007; however, she does not recall exactly when this occurred (Rec. Doc. 146-17, at 6-7; Rec. Doc. 158-10, at 22-23). Plaintiff testified that in response Sanders explained to her why the particular loan, complained of by Plaintiff, was approved (Rec. Doc. 146-17, at 7). Plaintiff then asserts that she went to speak with Sanders "a number of times," stating that she thinks it was in December of 2007 and then again January of 2008 (Rec. Doc. 146-17, at 10, 13). Plaintiff asserts that during the GNOFCU annual meeting on March 28, 2008, she approached Ray Condon, a GNOFCU Board member, and told him that she sees "some things that are unethical and possibly illegal" and that it was "making her extremely nervous" (Rec. Doc. 146-17, at 3). According to Plaintiff, Condon then

told her that he would contact her but instead notified Sanders
of Plaintiff's concerns and asked Sanders to address them (Rec.
Doc. 146-24, at 4). Sanders then called Plaintiff into her office
and inquired about Plaintiff's complaints. Plaintiff admitted
that she did not tell Sanders any details because she was "caught
offguard" (Rec. Doc. 146-17, at 4). On May 30 and June 9, 2008,
Plaintiff called one of the Board members, Wayne Aufrecht, in
order to set up a conference with the Board (Rec. Doc. 158-10, at
30-31). On  June 28, 2008, Plaintiff met with the Supervisory
Committee and then on August 21, 2008, Plaintiff wrote a letter
to the same Committee (Rec. Doc. 146-39, at 2).  Notably,
Plaintiff testified that GNOFCU had already responded to
Plaintiff's concern at the time she contacted the NCUA and the
FBI (Rec. Doc. 158-10, at 40-41).

However, even if Plaintiff could show that Defendants were
aware of Plaintiff's protected activity, Plaintiff cannot
establish a prima facie case of causation. The decision cited by
Defendants in their memorandum, <u>Fierros v. Tex. Dep't  of
Health</u>, 274 F.3d 187 (5th Cir.2001), was recently called into
question by <u>Smith v. Xerox Corp.</u>, 602 F.3d 320, 327 (5th Cir.
2010), which is the Fifth Circuit's current stance on the
allocation of the burden of proof in retaliation cases. Under the
"mixed-motives" test of causation in <u>Smith</u>, Plaintiff first must
show that the protected activity, i.e. her complaints about the

19

alleged violations, was at least a motivating factor in the adverse employment actions. Smith, 602 F.3d at 327. If she succeeds, then the burden "shift[s] to the employer . . . [to] establish[] that it would have made the same decision without that factor." Id. Defendants, on the other hand, argue for the "but-for" standard called for under the burden shifting framework first established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  They argue that Plaintiff must demonstrate that Defendants would not have taken the adverse employment actions but for Plaintiff's complaints.  Defendants contend that, under this test, once they have demonstrated legitimate, non-discriminatory reasons for the adverse employment action, then dismissal is warranted unless the Plaintiff can show that these non-discriminatory motivations are merely a pretext to cover up a discriminatory motive.

According to recent Fifth Circuit precedent, the district court has discretion as to whether the "but-for" or "mixed-motives" test for causation is applied.  In Smith, the Fifth Circuit held that the "mixed-motives" test may be applied without regard to the type of evidence put forth by the Plaintiff "if the district court has before it substantial evidence supporting a conclusion that both a legitimate and an illegitimate (i.e., more than one) motive may have played a role in the challenged employment action." 602 F.3d 320, 333 (5th Cir. 2010).  Notably,

the court reasoned that the case need not be "'correctly labeled as either a 'pretext' case or a 'mixed-motives' case from the beginning'" and that "'[a]t some point in the proceedings . . .the *District Court* must decide'" which test to apply.  Id. (quoting <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 247 n.12 (1989) (emphasis in <u>Smith</u>)).

Regardless of whether a "but-for" or "mixed-motives" test is applied here, the Plaintiff has failed to establish her prima facie case. Plaintiff states that to determine the existence of a causal link, courts look to three factors: "(1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination." <u>DeHart v. Baker Hughes Oilfield Operations, Inc.</u>, 214 Fed.Appx. 437, 442, 2007 WL 126081, *4 (5th Cir. Jan. 19, 2007). She points out that, prior to her demotion, she had no negative write-ups or blemishes in her record. In fact, her former supervisor wrote her letters of recommendation before and after termination. She also states that the fellow employee complaints in her file were all added during the week of Plaintiff's termination. Finally, Plaintiff argues that no policy was followed in demotion and then terminating Plaintiff.

Plaintiff is correct in pointing out that courts have held that "[c]lose timing between an employee's protected activity and

an adverse action against the employee may provide the causal connection needed to make out a prima facie case of retaliation." Sandres v. State of La., 2010 WL 3782122, at *5 (M.D. La. 2010) (citing McCoy v. City of Shreveport, 492 F.3d 551, 562 n.28 (5th Cir.2007); Swanson v. General Services Admin., 110 F.3d 1180, 1188 (5th Cir.1997)).  However, that alone is not sufficiently persuasive to avoid summary judgment here. In the case at bar, other than the temporal proximity, Plaintiff has not offered any evidence that her complaints played any role in her termination. Although Plaintiff did not have anything negative in her file prior to taking on two additional departments, the extra responsibilities proved to be to difficult for Plaintiff to handle, which fact was brought to Plaintiff's attention by the CEO and HR director. GNOFCU followed policy when they fired Plaintiff: Plaintiff was counseled by the CEO and HR director; she received notice and reasons in writing, and GNOFCU took an extra precaution of engaging the services of an attorney.

Assuming, *arguendo,* that Plaintiff can meet her initial burden, whether it is a "but for" or "mixed motive" standard, Plaintiff fails under the "but-for" test because she fails to carry her burden to show that the legitimate, non-discriminatory reasons for the adverse employment actions proffered by Defendants are pretextual. Plaintiff also fails to carry her burden under the "mixed-motives" test because she has not shown

22

that her complaints were at least a motivating factor in the adverse employment actions taken by her employer. Even under the less stringent burden of the "mixed-motives" test, Plaintiff cannot prove that retaliation was one reason for the adverse action taken by her employer.

There is abundant evidence in the record that shows Plaintiff was terminated due to her substandard performance, her poor managerial style, and her conflicts with other employees, to include Sanders, her direct supervisor. GNOFCU's previous CEO testified that Plaintiff did "a very good job" as a collections manager (Rec. Doc. 158-11, at 2-3). Plaintiff was never previously been reprimanded or otherwise written up. However, the demotion took place after Plaintiff failed to live up to the expectations commensurate with the new responsibility she assumed. In a letter to Plaintiff, dated June 9, 2008, CEO Sanders and HR Director Theresa Wolff explained that "many of the goals . . . set for [Plaintiff's] departments have yet to be accomplished" and that "after careful consideration" they decided to take away the additional duties that Plaintiff previously assumed (Rec. Doc. 146-11, at 2). The letter further explained that Plaintiff was unable to prioritize, was overwhelmed and unable to function efficiently and effectively. On August 8, 2008, Sanders addressed another letter to Plaintiff, in which Sanders expressed her concern about Plaintiff misrepresenting

facts on several occasions and her failure to perform certain tasks assigned to her. The same letter informed Plaintiff that her salary was being returned to its original level (decrease from $56,243.00/year to $48,150.00/year).

William G. Scott, the Chairman of the GNOFCU Board, testified that prior to Plaintiff sending her letter of complaint to the Board, the Board was aware that management had issues with Plaintiff's performance (Rec. Doc. 146-14, at 4). After Plaintiff sent a letter to the Board on August 21, 2008, the Board responded on October 8, 2008, concluding, with assistance of legal counsel, that there was "nothing inappropriate" in the actions of the management in reducing Plaintiff's responsibilities and adjusting her salary accordingly (Rec. Doc. 146-15, at 2). The Board found that retaliation played no role in any actions taken by the management and that such actions were made "in good faith on legitimate bases and with reasonable business judgment" (Rec. Doc. 146-15, at 2). The Board's letter also pointed out that Plaintiff's retaliation complaint was partially based on a "memo purportedly sent to Janet Sanders dated August 25, 2008, . . . which memo has never been provided to Ms. Sanders" (Rec. Doc. 146-15, at 2). In addition to Plaintiff's misrepresentations, which caused a "breakdown in confidence," the letter also states that "[t]here also have been complaints from other employees about [Plaintiff's] overbearing

style, of breaches by [Plaintiff] of confidential member
information, and of conduct by [Plaintiff] that is divisive and
undermining to other managers" (Rec. Doc. 146-15, at 3). The
Board concluded that it was in the Credit Union's best interest
to terminate Plaintiff.

One of Plaintiff's coworkers testified that in July of 2008
Plaintiff "verbally threatened everyone in the whole collections
department, stating that if she goes, everyone in the department
goes with her" (Rec. Doc. 146-40 at 4). Another coworker
complained that Plaintiff was "unprofessional and combative," has
a "stalker type mentality," and manipulates staff and other
management (Rec. Doc. 146-49, at 2). Further, Plaintiff herself
admitted that she was having issues with one of her employees
(Rec. Doc. 152-10, at 11) and that another one of her employees
frequently complained about Plaintiff (Rec. Doc. 152-10, at 11-
12). Coworkers also complained that Plaintiff carried a tape
recorder and recorded random conversations of her employees,
without their permission (Rec. Doc. 152-16, at 12). Plaintiff
also sent a mass email to the whole collections department,
telling GNOFCU employees about how unprofessional Sanders was
(Rec. Doc. 152-16, at 19). Plaintiff told her subordinates that
Sanders' company-provided Lexus will be Plaintiff's one day. CEO
Sanders provided the Supervisory Committee of the GNOFCU Board

with a detailed letter outlining various problems with
Plaintiff's performance (Rec. Doc. 158-23).

The Court concludes that Plaintiff cannot overcome the
substantial evidence put forth by Defendants to show that
retaliation did not motivate GNOFCU's decision to terminate
Plaintiff.  Plaintiff-the nonmoving party-will bear the burden of
proof at trial. On this motion for summary judgment, the moving
party may satisfy its burden by merely pointing out that the
evidence in the record is insufficient with respect to an
essential element of the nonmoving party's claim. Thus, it is
enough for Defendant to show that Plaintiff will be unable to
prove causation, i.e. that she was demoted and then terminated
because of her protected activity. Having reviewed the voluminous
evidence in this case, the Court now finds that Plaintiff cannot
meet her burden.

**D.  Claims Under 12 U.S.C.  § 1831j, 31 U.S.C. § 5328, and 18**
     **U.S.C. § 1513(e)**

Defendants assert that Plaintiff's claims under 12 U.S.C.  §
1831j and 31 U.S.C. § 5328 must fail because these statutes do
not apply to federal credit unions. Further, Defendants argue
that Plaintiff cannot sue GNOFCU under a criminal statute because
Plaintiff lacks standing. The Court agrees that Plaintiff's only
remedy is 12 U.S.C. § 1790b-the whistleblower statute directly

applicable to federal credit unions. Accordingly, Plaintiff's claims under these statutes must be dismissed.

**E. Punitive Damages**

Because the Court finds that there are not enough facts in the record to establish illegal retaliation, Defendant, *a fortiori*, is not liable for punitive damages. Accordingly, **IT IS ORDERED** that Plaintiff's **Motion in Limine (Rec. Doc. 143)**, regarding whether punitive damages will be discussed at trial, is **DENIED**.

**F. Attorneys' Fees**

Under La. R.S. 23:967(D), an employer may be entitled to attorneys' fees and costs if a suit is brought in bad faith or if the court determines the employer's act or practice was not in violation of state law. Hale, 886 So. 2d at 1215 and n.8. Louisiana appellate courts addressing the issue have found that these are independent bases for the award of fees. Id.; Accardo v. La. Health Servs. & Indem, Co., No. 2005 CW 2377 (La.App. 1st Cir. 06/21/06); 943 So. 2d 381, 385-386.

Initially, this Court notes the discretionary nature of the statute, which states that an employer may be entitled to attorneys' fees and costs. La. R.S. 23:967(D). The use of "may" rather than "shall" indicates a clear recognition by the legislature that attorney's fees and costs may not be appropriate

in all cases which fail to meet the "unwieldy" burden of the Louisiana whistleblower statute. <u>Hale</u>, 886 So. 2d at 1215.

Furthermore, the Court is not convinced that the first prong of § 967(D) is applicable because there are reasonable grounds to find that Plaintiff  brought these claims in good faith. The second prong addresses instances in which the Court finds no violation of state law. However, in this matter, there has been no such finding as the motion has been resolved on alternate bases. Thus, because of the discretionary nature of § 23:967(D), along with the specific facts of this case as outlined above, the Court declines to award Defendants attorneys' fees.

**G.    Motions in Limine**

Two motions in limine challenge testimony whose purpose is to prove or disprove that GNOFCU actually violated state law. Because the Court never reached this issue, the **Motions in Limine (Rec. Docs. 138 and 142)** are **DENIED as MOOT.**

For the foregoing reasons, **IT IS ORDERED** that Defendants' **Motion for Summary Judgment (Rec. Doc. 146)** is **GRANTED** in full, dismissing all of Plaintiff's claims with prejudice.

New Orleans, Louisiana this 15th day of November, 2010.


CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

28